UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANDRE DEEKS,

                Plaintiff,

      -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------------x

MEMORANDUM & ORDER

18-cv-328 (ENV)

VITALIANO, D.J.

      Plaintiff Andre Deeks requests review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of Social Security ("the Commissioner"), denying his application to reopen a claim for Child Disability Benefits ("CDB") under the Social Security Act (the "Act"). The parties have cross-moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's motion is granted and plaintiff's cross-motion is denied.

## Background

      Deeks was born, almost 70 years ago, on November 7, 1950. (R. at 13). He claims to have suffered brain damage as a child and to have developed a seizure disorder at age 12 in 1962.[1] (R. at 23). On March 13, 1975, Deeks applied for Supplemental Security Income ("SSI") benefits, but his application was denied. (R. at 159). In 1977 and 1978, he claims he lived with

---

[1] In various applications, continuing eligibility redeterminations and meetings with SSA officials, Deeks has contradicted himself as to the onset date of his disabling seizures, stating that he was not disabled prior to age 22 in December 2010, August 2011, July 2012 and January 2015 (R. at 73, 75, 87, 133, 147, respectively), and also stating that he *was* disabled prior to age 22; in November 2012, June 2013, March 2015 and May 2016. (R. at 99, 102, 111, 159, 212, respectively).

1

his father, Hiram Deeks, a Nassau County businessman. (R. at 212-13). He states that he worked for Nassau County during the summers of 1977 and 1978 but also claims that his job was secured for him by his father and involved no real work. (*Id.*). On December 10, 1978, Deeks's father died. (R. at 212).

On December 17, 1996, Deeks again applied for SSI benefits, and was again denied. (R. at 159). His fate would change when his application for SSI was finally approved on June 11, 1997. (R. at 159). On June 13, 1997, Dr. Allen Newman, a psychiatrist, wrote a letter to the Social Security Administration ("SSA"), which summarized conclusions from three interviews he had with Deeks in an effort to determine his capacity to function as an employee. (R. at 18). Dr. Newman described him as verbal, cooperative, and generally oriented to who he was and what was happening, but also described him as exhibiting tangled logical connections, being unable to maintain a clear, relevant narrative or cogent explanations of his planning, and exhibiting poor reality testing and distorted future planning. The letter noted that Deeks's condition had been present but was gradually worsening and included a "diagnostic impression" of a severe personality disorder with intermittent loss of reality testing, noting impaired cognitive function and opining that he was permanently unemployable and untreatable.[2] (R. at 18).

Deeks argues, correctly, that this application should also have been treated as a CDB application by SSA. POMS SI 00510.005(B)(2)(b; *i.e. Shaw v. Chater*, 221 F.3d 126, 135-36 (2d Cir. 2000). His 1997 SSI application is not, however, in the record; it is only mentioned as having been approved. (R. at 159). When he applied in 1997, SSA should have also considered

---

[2] In addition to the letter from Dr. Newman evaluating Deeks's psychological limitations, the record contains various other letters detailing Deeks's seizure disorder. (R. 13-15, 19-21). The earliest medical treatment for this disorder referenced in the letters is dated in 2005. (R. at 20). That Deeks is now disabled due to this disorder is not in dispute.

2

him for CDB and, considering that they did not begin paying him CDB benefits, should have sent him a CDB denial notice. Though, at any rate, neither of these documents appear in the record. There is, moreover no record of any appeal.

On August 15, 2001, Deeks married. (R. at 183). Over nine years later on December 6, 2010, he applied unsuccessfully for CDB. (R. at 73). On November 30, 2012, Deeks once again applied for CDB. (R. at 98). On April 8, 2013 he was denied CDB benefits because he was married. (R. at 108). On June 6, 2013, Deeks requested reconsideration of the denial, challenging the fairness of a denial based on that ground. (R. at 111). On November 20, 2013, reconsideration was denied. (R. at 115-16). About a month later, on December 12, 2013, he requested a hearing before an ALJ. (R. at 117). On March 30, 2015, he followed up on his hearing request and at the same time asked to reopen his 1997 application and to construe the 2012 application as a continuation of the 1997 application. (R. at 159-60). Deeks does not argue, though, that SSA improperly failed to consider him for CDB or that it improperly failed to inform him of the denial. He appears to accept that in conjunction with his 1997 application SSA did consider him for CDB, that it denied those benefits, and that it notified him of the denial. Nearly two decades later, Deeks petitioned the ALJ to excuse his failure to appeal the 1997 denial, building on this claimed dysfunction, he further petitioned to reopen the 1997 case, the stratagem was to use his cognitive disability as grounds for his failure to appeal in a timely fashion and permit him to appeal it now. (R. at 70).

With these filings in place, an administrative hearing was held on July 8, 2015. (R. at 62). The September 2, 2015 determination of the ALJ denied Deeks CDB benefits, finding that he was married when he applied in 2012 and that his single claim of mental impairment in 1997 was not good cause to reopen the 1997 application. (R. at 65, 70). The Appeals Council denied

review. (R. at 6). On November 29, 2017, the Appeals Council, having considered supplemental evidentiary letters, adhered to its decision. (R. at 3). This action followed.

## Applicable Law

The exhaustion of all administrative remedies by an aggrieved SSA claimant is an essential prerequisite before seeking review in a federal court, the court review is only available for a "final decision . . . made after a hearing." An ALJ's decision, unless vacated in review by the Appeals Council, becomes such a final decision, satisfying the requirement for exhaustion, as is the case here. 42 U.S.C. § 405(b). Finality may also be present where an ALJ constructively reopens the case by reviewing the case record and renders a merits determination, or where a violation of due process is shown in SSA's administrative handling of the case. *Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003). Due process claims may arise in an administrative setting if a denied applicant can show that the denial was constitutionally defective because, for example, notice of denial was sent to the appellant where he was too cognitively impaired to understand the process for appeal.

The Second Circuit has found jurisdiction properly invoked in cases where due process claims are based on cognitive impairment but only "upon a particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension," case law makes clear, moreover, that such claims "cannot invoke federal court jurisdiction merely upon a generalized allegation, long after the fact, that the claimant was too confused to understand available administrative remedies." *Stieberger v. Apfel*, 134 F.3d 37, 40–41 (2d Cir. 1997).

After satisfactorily demonstrating that the decision is final or otherwise eligible for review, § 405(g) empowers district courts to review a disability decision of the Commissioner and affirm, reverse or modify it "with or without remanding . . . for a rehearing." 42 U.S.C. §

4

405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). A reviewing court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Shaw*, 221 F.3d at 131 (citing 42 U.S.C. § 405(g)).

As for the substantive standard of law controlling in this case, that is, to qualify for Title 16 Child Disability Benefits, a CDB claimant is required to "have a disability that began before [he] became 22 years old." 20 C.F.R. § 404.350(a)(5). A CDB claimant can apply, as an unmarried disabled adult child, on the earnings record of one of their parents a) if that parent is retired and receiving social security payments, b) if that parent is themself disabled, or c) if that parent is deceased. 20 C.F.R. 404.350(a). An affirmative showing of non-disability in adulthood bars a claimant from thereafter claiming CDB; the showing will stand as proof that, even if the claimant was disabled as a child, that disability ceased and any disability that they might suffer thereafter cannot relate back to their childhood as required under 20 C.F.R. § 404.350(a)(5).

## Discussion

A.   The ALJ's Determination

The ALJ did not find Dr. Newman's letter to be good cause to reopen Deeks's 1997 case. In support of that finding, he determined that the letter did not prove cognitive impairment sufficient to have rendered Deeks incapable of timely appealing the 1997 denial of CDB.

This holding comes against the backdrop of a regulatory scheme which provides that denied SSA applications can be reopened for review within a year of the decision for any reason, and within four years with a showing of good cause.[3] 20 C.F.R. §404.988. After four years,

---

[3] For this purpose, furnishing new and material evidence or showing error (clerical or judicial) in the original hearing qualifies as good cause. 20 C.F.R. §404.989.

5

they can still be reopened if an SSA adjudicator finds good cause to extend the review request; 'good cause' in this context requires the claimant to show "evidence establish[ing] that he or she lacked the mental capacity to understand the procedures for requesting review." SSR 91-5P, 1991 WL 208067, at *2 (July 1, 1991). The ALJ is to consider, *inter alia*, illiteracy, a lack of fluency in English, a limited education or "any mental or physical condition which limits the claimant's ability to do things for him/herself" and is enjoined to resolve reasonable doubts in favor of the claimant. *Id.*

Generally, the claimant has the burden of proof to establish eligibility. POMS GN 00301.001. More specifically, "[t]he burden of demonstrating the appropriateness of equitable tolling…lies with the plaintiff" and claims which are "conclusory [or] vague," or which lack "a particularized description of how [the] condition adversely affects [the plaintiff's] capacity to function generally or in relationship to the pursuit of her rights" are considered "manifestly insufficient to justify any further inquiry into tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). As previewed earlier, Deeks attempted to show evidence of his incapacitation during the relevant period by submitting a 1997 letter from a psychiatrist, Dr. Newman, to the ALJ, which describes various aspects of Deeks's mental confusion. (R. at 18). He asked the ALJ (1) to find, based on the letter, that he was too cognitively impaired to have been able to timely appeal the 1997 CDB denial, (2) to reopen the 1997 case, and (3) to regard the 2012 CDB application not as a stand-alone application filed while he was married but also as an application to extend the 1997 application filed before he was married and when, if reopened, would still carry that status.

In declining to reopen the 1997 case, the ALJ focused on that fact that Deeks had "pursued his filings and benefits independently over the years, and [had] shown sufficient

6

capacity to understand and pursue benefits in the past." (R. at 64). Transparently, the fact that Deeks had filed multiple documents with SSA, in purported compliance with its regulations, over several years emasculated the argument that he was too cognitively impaired to file a timely appeal. Deeks's manifest ability to make those repeated filings led the ALJ to conclude that Deeks was capable of proceeding on his request at the time he filed the 2012 application, and there should be no relating back to the 1997 application and that the pending application should be dismissed.

  B. Subject Matter Jurisdiction

In *Califano v. Sanders*, 430 U.S. 99, 108-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that federal courts have no jurisdiction to review a decision not to reopen a closed claim, absent a rare constitutional challenge. *See Smith v. Berryhill*, 139 S. Ct. 1765, 204 L.Ed.2d 62 (2019) (differentiating between an appeal from an ALJ's review of an administrative decision of SSA denying benefits and dismissal of an ALJ's decision not to reopen a closed case). Structurally, an appeal to the district court from an ALJ's review of an administrative denial of benefits under this Act
is part of the Act's adjudication process and is a statutory entitlement under §405(b), on the other hand, ordinarily a request that a case be reopened is outside the statutory adjudication process and is a matter left to the discretion of SSA "as a matter of grace." *Id.*

Since Deeks did not secure administrative grace, he now confronts the daunting task of establishing the subject matter jurisdiction which, alone, will give the Court the power to hear his claim that his 1997 case should have been reopened. Stated differently, because the ALJ's decision not to reopen that claim was an administrative decision, not a final decision for purposes

of §405(g), that determination is not automatically reviewable by a district court. Jurisdiction to review it can only be invoked if an ALJ constructively reopens the case by reviewing the entire record and deciding on its merits, or if a violation of due process is shown. *Byam*, 336 F.3d at 180. Given that, on the record, it is indisputable that the ALJ did not constructively reopen the case, the only way Deeks can establish subject matter jurisdiction in this Court is to show, particularly, that he can state a due process claim.

In the Second Circuit due process claims have been found to be properly stated where litigants satisfy the *Stieberger* standard, in cases where the plaintiff's inability to understand appeal procedures has been shown through medical diagnoses of specific syndromes. Often, this approval is given when the diagnoses and treatment have been ongoing for years or decades. Specific diagnoses, especially when paired with extensive repeated documentation, can reach the *Stieberger* requirement of symptoms which are sufficiently particularized to demonstrate cognitive impairment which can render a denial notice constitutionally defective. Lacking specificity and documented duration, however, renders a case incapable of raising a due process claim. Deeks's case falls into this deficient category.

Case law provides useful guideposts for determining whether a showing made in support of a due process claim is sufficiently particularized. In *Byam*, the Second Circuit held that an ALJ had improperly refused to consider an SSI applicant's mental impairment in the context of her failure to timely appeal, thus, denying the appellant due process in rejecting her benefit claim and rendering the ALJ's decision not to reopen her closed case constitutionally erroneous. In making its determination, the Court found that the ALJ failed to consider "evidence of Byam's long history of depression, suicidal ideation with specific suicide attempts, and numerous evaluations around the dates of her SSI applications documenting specific mental disorders and

cognitive, social, and emotional impairments," holding this evidence to be "sufficiently particularized and severe to meet *Stieberger*'s threshold allegation requirement." 336 F.3d at 183. Similarly, an ALJ was found to have improperly declined to reopen a case in which a claimant showed that she had been medically diagnosed with "depression, somatization, and anxiety since 1976," a full 20 years before she applied for SSI. *Bonner v. Astrue*, No. 07-cv-5015 (NGG), 2010 WL 4568875, at *6 (E.D.N.Y. Nov. 3, 2010); *see also Downey v. Astrue*, No. 08-cv-1010 (TJM), 2009 WL 1161046, at *3 (N.D.N.Y. Apr. 28, 2009) (holding that the *Stieberger* standard was met by an examiner's testimony that the plaintiff may have had "difficulty adequately understanding and following…instructions and…completing some tasks due to attention and concentration deficits secondary to PTSD and depression.") (internal quotation marks omitted).

The salient point, though, is that particularization of the qualifying impairment is essential. The jurisprudence attributable to due process claims is littered with claims that have foundered in the absence of particularization. For example, in *Kesoglides v. Comm'r of Soc. Sec.*, No. 113-cv-4724 (PKC), 2015 WL 1439862, at *4 (E.D.N.Y. Mar. 27, 2015), the claim did not establish subject matter jurisdiction essential to a purported due process claim because he "stated only that an unspecified illness and the loss of his apartment left him 'confused and disoriented'" without further describing the condition or how it precluded him from timely filing. Likewise, a plaintiff alleging mental impairment but who was only able to show reports that he was "moderately depressed and experienced flashbacks and rage," was held to have failed to raise a colorable constitutional claim. *Velsor v. Astrue*, No. 04-cv-10009 (TPG), 2009 WL 1270229, at *2 (S.D.N.Y. May 6, 2009); *see also Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-41(JMC), 2017 WL 4857562, at *7 (D. Vt. Oct. 25, 2017) (ALJ reasonably denied a plaintiff

9

who merely claimed that he "suffered a medical condition" and "a mental condition that impaired his ability to understand [the ALJ's decision]") (citations and internal quotation marks omitted), *aff'd sub nom. Johnson v. Berryhill*, 736 F. App'x 27 (2d Cir. 2018) (summary order).

Deeks's proffer of historical testimony and evaluation of what he now claims were the conditions that so impaired his cognitive abilities that he was not able to perfect his statutory adjudication rights falls woefully short of the detail sufficient to meet the *Stieberger* standard. Dr. Newman's letter, upon which, essentially, his due process contention rests, only describes Deeks's mental impairment (e.g. "obsessive mode of thought," "impaired judgment," (R. at 18)); it does not classify the impairment. *C.f. Byam*, 336 F.3d at 177-78 (claimant diagnosed with auditory hallucinations, dysphoria, anhedonia, social phobia, post-traumatic stress disorder and borderline retarded intellect.). Dr. Newman's letter states "[t]he diagnostic impression is a severe personality disorder and intermittent loss of reality testing." (R. at 18).

Rather than particularization, Deeks offers scattered evidence of hop-scotch evaluations, usually for an unrelated purpose. In broad strokes, the record shows he was turned down for SSI in 1975 and 1996, approved for SSI in 1997 and met with Dr. Newman in 1997.[4] (R. at 20, 159, 18). Three of the four interactions before 2005 were SSA evaluations for disability rather than routine private treatment, that two of these three resulted in declarations of non-disability (R. at 159), that the fourth (Dr. Newman's evaluation) was a narrow evaluation to establish employability rather than a full medical evaluation (R. at 18), and at three of the four were

---

[4] In *Estrella v. Berryhill*, No. 17-3247, 2019 WL 2273574, at *5 (2d Cir. May 29, 2019), the Second Circuit vacated and remanded a case where the ALJ had given substantial weight to a report from a psychologist who had examined the claimant only once, reiterating an earlier caution that in matters arising under the Act, generally, ALJs should not rely on reports arising from single examinations. *See also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).

clustered in a two-year period. *C.f. Bonner*, 2010 WL 4568875, at *6 (Diagnoses of "depression, somatization, and anxiety" sufficient to re-open a closed case).

In line with these precedents, it is clear that Dr. Newman's evaluation created on the basis of his 1997 evaluation alone qualified only as a "generalized assertion" of mental impairment and, consequently, cannot satisfy plaintiff's obligation to meet the burden imposed by *Stieberger*. *See Stieberger*, 134 F.3d at 40-41. When the ALJ declined to reopen the 1997 case, it was that letter that Deeks advanced in 2015, and here in 2018, 21 years after it was evaluated, to prop up his due process claim. In short, the proffer is an assertion made "long after the fact" and federal jurisdiction is therefore improper. *Id.* With a constitutional claim unsupported, subject matter jurisdiction fails.

Indeed, the shortfall in his particularization of his claimed cognitive impairment is not the only record shortfall dooming Deek's ability to establish a constitutional deficiency creating subject matter jurisdiction to entertain his claim. Substantial evidence in the record showing his abilities over the years may be even more damning. The Second Circuit has held that even documented mental impairments can be disregarded, as reasons for failure to apply a denial, if facts from the record suggest the ability to engage in the world at a basic level, as in a case where the plaintiff "had filled out the disability report mostly, if not solely, on her own." *Kreidler v. Astrue*, 307 F. App'x 496, 498 (2d Cir. 2009) (summary order). There, the plaintiff also graduated high school and held down various jobs; these facts were held to constitute "substantial evidence supporting the ALJ's determination that [she] was sufficiently mentally capable timely to pursue appellate-review channels." *Id.*

The record is silent as to Deeks's educational history but contains several documents hand-written or personally filled out by Deeks. (R. at 23, 111, 117). These are all written in the

11

same clear and legible handwriting, indicating basic literacy and command of the English language, both reasons against finding good cause to reopen. SSR 91-5p, 1991 WL 208067, at *2 (July 1, 1991). The ALJ observed that Deeks had "pursued his filings and benefits independently over the years, and [had] shown sufficient capacity to understand and pursue benefits in the past." (R. at 64). Deeks filed the 1997 application before he was represented by counsel and was able to file other applications both before and after 1997, also without representation. Deeks has failed to offer any explanation as to how he could have been functional enough to file the 1997 application but then too impaired to appeal its denial. The Sixth Circuit has pointed out that "the form to request reconsideration is a single page, and is perhaps less complicated than the original application and other materials that [a claimant] would have completed to get to [that] point in the application process." *Newhouse v. Comm'r of Soc. Sec.*, No. 18-3856, 2019 WL 1975938, at *2 (6th Cir. May 3, 2019) (internal quotations omitted). The fact that Deeks was able to competently file an SSI application in 1997 fundamentally contradicts the assertion that he was cognitively incapacitated in 1997.

As discussed above, Dr. Newman's letter mentions "intermittent" loss of reality testing. (R. at 18). Deeks does not, however, claim that he experienced alternating periods of lucidity and dysfunction and that he applied during a lucid period but then fell into a period of dysfunction soon after, which made him unable to appeal. Indeed, at the ALJ hearing, Deeks's attorney argued that Deeks failed to appeal because he was "in his normal state of confusion". (R. at 70). Deeks only claims a blanket assertion of impairment for the relevant period, in the face of evidence that he performed actions of the very type he is asserts he could not perform.

12

## Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted and plaintiff's cross-motion is denied. Plaintiff's claim is dismissed without prejudice for lack of subject matter jurisdiction.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       September 26, 2019

                                              s/Eric N. Vitaliano
                                              _____
                                              ERIC N. VITALIANO
                                              United States District Judge